**PUEBLO, a Municipal Corporation; City Council of Pueblo; and Shelly Medina, Plaintiffs–Appellants,**

**v.**

**FIRE AND POLICE PENSION ASSOCIATION; Board of Directors of the Fire and Police Pension Association; Carl Gustafson, Kenneth Harris, Robert Hutchings, Ray Magan, Richard Holck, Harvey Rubinstein, Mark Glover, Edward Sullivan, and Sam Sasaki, as present and former members of the Board of Directors of the Fire and Police Pension Association; Local 537 of the International Brotherhood of Police Officers; James Billings; Lloyd J. Smart; Timothy Pepin; Local 3, International Association of Fire Fighters, also known as Pueblo Fire Fighters, Local 3, Individually and on Behalf of all Fire Fighters Employed by the City of Pueblo on or before April 8, 1978; David Blagg; Ed Brown; Richard Diiorio; Bob Lockhart; and John Nemick, also known as John Nermick, Defendants–Appellees.**

**No. 90CA1967.**

Colorado Court of Appeals, Div. I.

Feb. 13, 1992.

Thomas J. Florczak, Thomas E. Jagger, Pueblo, for plaintiffs-appellants.

William Morris, Norman L. Ruggles, Englewood, for defendants-appellees Fire and Police Pension Ass'n, Bd. of Directors of

the Fire and Police Pension Ass'n, Carl Gustafson, Kenneth Harris, Robert Hutchings, Ray Magan, Richard Holck, Harvey Rubinstein, Mark Glover, Edward Sullivan and Sam Sasaki.

Brauer, Buescher, Valentine, Goldhammer & Kelman, P.C., Dennis E. Valentine, Denver, for defendants-appellees Local 3, Intern. Ass'n of Fire Fighters, David Blagg, Ed Brown, Richard Diiorio, Bob Lockhart and John Nemick, also known as John Nermick.

Opinion by Judge SMITH.

Plaintiffs, Pueblo (City), its city council, and Shelly Medina, appeal the judgments of the trial court dismissing all of the City's claims against the defendants, the Fire and Police Pension Association (FPPA) and its Board of Directors (the Board), the local fire and police unions, and various individuals. We affirm.

This action concerns a ruling by the Board as to the availability of a benefit referred to as "rank escalation" to retired fire and police employees who are members of pension plans affiliated with FPPA. This benefit entitles a retiree to receive, throughout his retirement, pension increases equal to half of the amount of any increase in salary granted to active firemen and policemen holding the rank formerly held by the retiree at the time of retirement.

In 1978, a special committee of the Colorado Legislative Council concluded that, on a state-wide basis, local fire and police pension plans had estimated unfunded accrued liabilities of $500,000,000. Colorado Legislative Council, Research Publ. # 229, *Fire & Police Pensions* 4 (1977). In response, the General Assembly in 1978 enacted the "Policemen's and Firemen's Pension Reform Act" (Pension Reform Act) which, with amendments enacted in 1979, requires "employers" that is, any municipal or fire protection district employing one or more firefighter or policeman, to fund, with conditional state-assistance, its fire and police pension plans at levels designed to amortize the plan's unfunded liabilities over the next forty years. Specifically, the Pension

Reform Act: (1) created a new statewide retirement plan for police officers and firemen hired on or after April 8, 1978 (new hires), thereby limiting membership in all existing local fire and police pension plans (old hire plans); (2) modified benefits under old hire plans; and (3) created the FPPA as a body corporate and a political subdivision of the state, albeit not an agency of state government, and established the Board as its governing body.

At issue here is the modification in benefits brought about by the Pension Reform Act, specifically § 31–30–1014(4)(b), C.R.S. (1986 Repl.Vol. 12B), which provides in relevant part:

(I) Each employer having rank escalation and having members hired prior to April 8, 1978, who have made the irrevocable election to remain covered under the local plan ... shall determine for each such employee the percentage that such employee's years served as of January 1, 1980, bear to the total number of years required for retirement. At retirement, the retirement pension shall be divided into that percentage and the remainder. The portion of the retirement pension equal to that percentage earned as of January 1, 1980, shall be subject to rank escalation as provided under the local plan, and the remainder of the retirement pension shall be subject to the same adjustment as that determined by the Board ...

(II) An employer may elect to continue full rank escalation benefits for that portion of the retirement pension subject to the adjustment as provided [above], but no state contribution shall be used to fund such continuation of rank escalation or any unfunded liabilities incurred as a result of such continuation of rank escalation.

For those members who retire after January 1, 1980, the foregoing statute divides benefits between pre–1980 and post–1980 service. Retirees are entitled to rank escalation increases for that portion of retirement pay attributable to pre–1980 service but are limited to cost-of-living increases, as determined by the Board, for that por-

tion attributable to post-January 1, 1980, service. The statute further grants an employer the *option* to continue rank escalation benefits for years of service beyond January 1, 1980. However, the employer so electing and not the state shall bear the costs of continuing such benefits.

Prompted, in part, by benefit queries from employers and members of old hire plans, the Board, in the fall of 1985, promulgated FPPA Rule 203.04.01, et seq. (FPPA Handbook '89) (the Rules) to enable it to review whether an employer had "elected" to continue rank escalation benefits after January 1, 1980.

In sum, the Rules: (1) require all subject employers who have not elected to continue rank escalation benefits to notify the Board that such benefits have been discontinued; (2) allow members time to provide evidence of continuance; and (3) if such evidence provides reasonable cause for a belief that the employer has not discontinued the benefit, direct the Board to hold a hearing on the matter. Finally, the Rules provide that the Board's decision after the hearing is final for purposes of judicial review.

In accordance with the Rules, the City notified the Board that it had not elected to continue rank escalation benefits beyond January 1, 1980. Plan members disagreed and requested that the Board review the issue. Finding reasonable cause to believe that the City had continued the benefits, the Board, acting in its quasi-judicial capacity, held an evidentiary hearing, and thereafter, it concluded that the City had, indeed, elected to continue rank escalation benefits for members of its old hire plan after January 1, 1980.

The City then filed the lawsuit at issue here, seeking relief under C.R.C.P. 106(a), declaratory relief, and relief pursuant to 42 U.S.C. § 1983 (1989). The latter claim was dismissed and is not a subject of this appeal.

The trial court bifurcated the C.R.C.P. 106(a) claim from the other claims. Following separate hearings, the trial court dismissed the C.R.C.P. 106(a) claim and entered summary judgment in favor of FPPA and the Board on the remaining claims.

## I.

The City contends that the trial court erred in dismissing its C.R.C.P. 106(a) claims. We disagree.

■ The trial court's scope of review in a C.R.C.P. 106 proceeding is strictly limited to determining whether the Board, in conducting a hearing under the Rules, exceeded its jurisdiction or abused its discretion. *Garland v. Board of County Commissioners*, 660 P.2d 20 (Colo.App.1982). On appeal, this court is in the same position as the trial court. *Empiregas, Inc. v. County Court*, 713 P.2d 937 (Colo.App.1985).

## A.

■ The thrust of the City's initial argument is that the evidentiary hearing conducted by the Board exceeded its jurisdiction. Specifically, the City argues that the purpose of the hearing held by the Board was to set the scope of local pension benefits, a policy determination expressly reserved to the City under § 31–30–1014(4)(b)(II), C.R.S. (1986 Repl.Vol. 12B).

The trial court specifically addressed and rejected this argument. In doing so, the trial court found and concluded that the purpose of the hearing was, simply, to review and ascertain the character or nature of the *City's* determination regarding continuation of rank escalation benefits. The trial court further found that this determination was critical to the Board's ability to carry out its statutory obligations, first, to members eligible for benefits under pension plans affiliated with FPPA and, second, to the state in distributing its contributions to such plans. Thus, the trial court concluded that the Rules fit squarely within the Board's express statutory authority under § 31–30–1005(1)(j), C.R.S. (1991 Cum. Supp.) to "promulgate all rules and regulations necessary to implement ... part 10 [of the statute concerning members benefits]."

We agree with the trial court's analysis and conclusion. The Rules provide in relevant part:

An employer shall be deemed to have continued rank escalation benefits as permitted by § 31–30–1014(4)(b)(II) C.R.S. as amended if by affirmative act or acts it indicates its intent to continue such benefits. By way of example and not by way of limitation, such acts may include the adoption of a resolution concerning the continuation of rank escalation benefits, the payment of escalation benefits to a member for years of service after 1980, or the authorization of payment of rank escalation benefits to a member for years of service after 1980.

Clearly, the Board's actions under the Rules are limited to interpreting acts *taken by the employer.* Thus, the dispositive actor in setting the scope of pension benefits, undisputably a local policy issue, continues under the Rules, to be the *City* as the employer.

This "interpretive" role, as noted by the trial court, is consistent with the Board's general authority to "promulgate all rules and regulations necessary to implement ... part 10." Moreover, it is clearly a prerequisite to the Board's fulfilling its significant statutory obligations under the pension plan scheme.

■ Specifically, the Board is named trustee of the fire and police members' benefit fund which includes contributions by employers and employees of affiliated plans. *See* § 31–30–1012(2), C.R.S. (1986 Repl.Vol. 12B). As trustee, the Board must, as a matter of law, insure that beneficiaries of the fund receive the appropriate level of benefits provided by the local plan and, if necessary, investigate what benefits are "appropriate." *See generally Rippey v. Denver United States National Bank,* 273 F.Supp. 718 (D.Colo.1967).

Furthermore, as "gatekeeper" of state monies, the Board must insure that employers maintain a level of annual contributions to pay earned benefits to present and future plan members (§ 31–30–1005(1)(i), C.R.S. (1991 Cum.Supp.) and see that no state monies are used to fund a continuation of full rank escalation benefits after January 1, 1980. Section 31–30–1014(4)(b)(II), C.R.S. (1986 Repl.Vol. 12B).

Accordingly, we hold that the trial court did not err in rejecting the City's jurisdictional argument.

### B.

■ Next, the City argues that the trial court erred in finding and concluding that the Board's decision that the City had elected to continue rank escalation benefits after January 1, 1980, was supported by competent evidence. We disagree.

In order to reverse the decision of an administrative body operating in its quasi-judicial capacity, the decision must be "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." Because the FPPA is not an agency of state government, the standard of review is not whether there is "substantial evidence" under the State Administrative Procedure Act, § 24–4–106(7) C.R.S. (1988 Repl.Vol. 10A), but rather, whether there is "no competent evidence" under C.R.C.P. 106(a)(4) to support the decision. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304 (Colo.1986). We conclude that the trial court properly determined that the City failed to meet this stringent standard.

Evidence established that the City, by ordinance adopted in 1970, authorized the addition of rank escalation benefits to its local fire pension plan. This ordinance was never repealed. Indeed, two subsequent incidents bolster its continued validity well past the enactment of the Pension Reform Act. First, a 1979 resolution by the city council referenced this particular 1970 ordinance in extending rank escalation benefits to eligible firemen who "retired during the calendar year 1980." Hence, the resolution, albeit concerning only one year, indicates that the council intended the 1970 ordinance to apply after January 1, 1980. Second, a proposed 1983 ordinance that included provisions which would have conformed the old hire plan to the Pension Reform Act by limiting rank escalation benefits to pre-January 1, 1980, services was enacted only after those "conforming provisions" were deleted.

Finally, the evidence revealed that City employees' actions in the mid–1980's were consistent with the 1970 ordinance. City employees responsible for administering the pension plan not only directed FPPA to pay rank escalation benefits after January 1, 1980, but also indicated, in contract arbitration hearings with fire employees, that the City continued to be obligated to pay such benefits under the old hire plan.

In light of the foregoing, we conclude that there was ample evidence to support the Board's decision.

The City argues on a number of grounds, however, that the foregoing evidence is not "competent." Among other arguments, the City asserts that the 1983 ordinance essentially constitutes inaction by the city council and, thus, is not an affirmative act by that body. However, a review of the testimony presented at the Rule hearing indicates that the deletion of the "conforming provisions" was based, at least in part, on testimony presented to the council by members of the old hire fire plan. This testimony essentially regarded past representations by city officials that rank escalation benefits had, or would be, continued. Hence, we conclude that, under the circumstances, the consideration and rejection of the conforming provisions in the 1983 ordinance consisted of an active affirmance of the 1970 ordinance.

The City further argues that only the city council can articulate city policy. Thus, the City asserts that its employees' actions are improper evidence from which to determine the issue of the continuation of rank escalation benefits. Even relegating the City employees' actions to supportive evidence, however, does not change the fact that the 1983 ordinance essentially reaffirmed the City's express position on the continuation of rank escalation benefits as set forth in the 1970 ordinance. Hence, we conclude that this argument, too, is without merit.

In sum, we hold that the trial court did not err in finding and concluding that the Board's decision was supported by competent evidence.

## C.

The City also raises a number of constitutional arguments, all of which turn on the character or nature of the Board's actions under the Rules and the mode by which the City must act in legislative matters. However, we conclude that these arguments have been fully discussed and resolved under the jurisdictional and "competent" evidence discussions above. Thus, we find it unnecessary to address them further.

## II.

Next, the City contends that the trial court erred in granting summary judgment in favor of FPPA and the Board on its claims seeking to have the Rules declared void and unconstitutional. We disagree. Our analysis and conclusion under Part I is applicable to, and dispositive of, this contention of error.

## III.

Finally, the City contends that the trial court erred in ruling that the presence and participation of a particular Board member in the hearing did not undermine the impartiality of the Board's decision. We disagree.

Those serving in a quasi-judicial capacity are presumed to have acted with integrity, honesty, and impartiality. And, the burden of rebutting such a presumption is on the one who challenges the quasi-judicial decision. *Scott v. City of Englewood,* 672 P.2d 225 (Colo.App.1983).

Here, the record reveals that one Board member, as required by § 31–30–1004, C.R.S. (1986 Repl.Vol. 12B), was a retired firefighter. Moreover, he was, as noted by the City, a member of the City's old hire plan who had rendered service after January 1, 1980. Thus, he clearly had an interest in the issues before the Board. However, the record unequivocally demonstrates that this member's "participation" was limited to being present at the public hearing. Specifically, it reveals that this member did not ask questions of wit-

nesses or make comments during the hearing. Nor did he participate either in the Board's deliberations at meetings held subsequent to the hearing or in the adoption of its determination on the issue.

Under these circumstances, we conclude that the trial court properly ruled that the City failed to rebut the presumption of impartiality.

The judgments are affirmed.

HUME and NEY, JJ., concur.